UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

BARBARA DISHMAN,                    )
                                     )
        Plaintiff,                   )          No. 6:25-CV-77-HAI
                                     )
v.                                   )
                                     )          MEMORANDUM OPINION
FRANK J. BISIGNANO,                  )              & ORDER
*Commissioner of Social Security*,   )
                                     )
        Defendant.                   )
                                     )

*** *** *** ***

In November 2023, Plaintiff Barbara Dishman filed a Title XVI application for supplemental security income. *See* D.E. 11 at 25.[1] She alleged disability beginning June 15, 1999. *Id.* This application followed a previous application from September 2014, that alleged disability beginning in November 2001. *Id.* That 2014 application was denied in 2017, and the findings from the prior application provide the starting point for the Commissioner's analysis of the 2023 application. The Social Security Administration denied Dishman's 2023 application initially and upon reconsideration. *Id.* Then, on January 10, 2025, Administrative Law Judge ("ALJ") Brian A. Oakes conducted a telephonic administrative hearing. The ALJ heard testimony from Dishman (represented by attorney Paul Baker with attorney Jessica Baker also present) and impartial vocational expert ("VE") Courtney Clem. *Id.* Dishman was found to not be disabled during the relevant period. *Id.* at 35. The Appeals Council denied review on February 21, 2025. *Id.* at 1.

---

[1] References to the administrative record are to the large black page numbers at the bottom of each page.

On April 25, 2025, Dishman (with different counsel) brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's January 2025 decision denying her application for disability insurance benefits and supplemental security income. The parties filed briefs, including a reply. D.E. 12, 14, 15. In August 2025, the parties consented to the referral of this matter to a magistrate judge. D.E. 16. The matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Dishman "not engaged in substantial gainful activity since November 21, 2023, the application date (20 CFR 416.971 et seq.)." D.E. 11 at 28.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

2

case, the ALJ found Dishman had the severe impairments of "degenerative disc disease, chronic obstructive pulmonary disease, anxiety, and depression (20 CFR 416.920(c))." D.E. 11 at 28. Dishman does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then she is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Dishman failed to meet this standard. D.E. 11 at 28. The ALJ considered several listings but found none of them satisfied in Dishman's case. *Id.* Relevant to this appeal, the ALJ considered mental impairments under Listings 12.04, 12.06, and 12.11. *Id.* at 29. Dishman does not challenge this determination that she fails to meet or medically equal the criteria for any of these listings. Her briefing nowhere addresses the elements of these or any other listed impairments.

Some aspects of the ALJs' step-three consideration of potential mental impairments are relevant to the parties' arguments. The ALJ considered the four different domains of the "paragraph B criteria" and found that Dishman has "moderate limitation" in three of the four domains: (1) *mild* limitation in understanding, remembering, or applying information; (2) *moderate* limitation in interacting with others; (3) *moderate* limitation in concentrating, persisting, and maintaining pace; and (4) *moderate* limitation in adapting or managing oneself. D.E. 11 at 29. In these analyses, the SSA uses a five-point rating scale of increasing limitation consisting of "no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The regulations define these five levels of limitations as follows:

a.    No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b.      Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c.      Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d.      Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e.      Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.

Thus, the ALJ found Dishman had moderate (*i.e.*, mid-range or "fair") limitations in three of the four mental-impairment domains.  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00, describing "Mental Disorders."

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is her maximum ability to do physical and mental work activities on a sustained basis despite limitations from her impairments.  The ALJ found:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she can frequently climb ramps and stairs. She can never climb ladders, ropes, or scaffolds.  She can frequently balance, stoop, kneel, crouch, and crawl.  She should avoid concentrated exposure to atmospheric conditions, also known as pulmonary irritants like dusts, odors, fumes, and poor ventilation.  She should avoid concentrated exposure to extreme heat and extreme cold. Mentally, she can understand and remember simple instructions.  She can maintain attention, concentration, and pace to carry out simple tasks over two-hour segments during an eight-hour workday.  She can occasionally interact with coworkers and supervisors but cannot interact with the public.  She can adapt to occasional workplace changes related to simple tasks.

D.E. 11 at 30.

Dishman objects to this RFC finding.  She argues the ALJ "failed to incorporate all the limitations from the prior administrative [] findings of the state agency psychological

4

consultants." D.E. 12 at 8.[3]  She points out that the ALJ found persuasive the psychological opinion that Dishman's moderate limitations meant she was "limited to simple, 1 to 2-step tasks; she must avoid interaction with the general public; and she can only occasionally. Interact with coworkers in a setting where workplace settings (likely meant changes) are infrequent and gradually introduced." D.E. 12 at 12 (quoting D.E. 11 at 95).  Dishman points out that the 2025 RFC does not include these precise limitations, and she argues the ALJ failed to explain why he worded the limitations differently.  *Id*. at 13-14.

Dishman makes an additional argument that the ALJ erred under the *Deskin* rule by relying on raw medical data that was unaccompanied by an expert opinion that translated the data into functional terms.  D.E. 12 at 19-21.

At the fourth step, if a claimant's impairments do not prevent her from doing past relevant work (given the ALJ's assessment of the claimant's residual functional capacity), she is not disabled.  20 C.F.R. § 404.1520(f).  The ALJ found that Dishman had no past relevant work.  D.E. 11 at 33.

At the fifth step, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from doing other work that exists in the national economy, she is not disabled.  20 C.F.R. § 404.1520(g).  The ALJ found Dishman was not disabled at this step.  D.E. 11 at 34-35.  The ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with Mr. Dishman's age, education, work experience, and residual functional capacity."  *Id*. at 34.  The expert provided a list of jobs including garment sorter, inspector / hand packager, and price marker.  *Id*.  Because sufficient work existed in the national economy that Dishman could perform, the ALJ found her "not disabled" as defined by the regulations.  *Id*. at 35.

---

[3] For the parties' briefs, page number references are to the blue numbers generated by ECF.

## II.  Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007).  Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied.  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole.  *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations.  *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

Disability determinations often hinge on the claimant's credibility. The ALJ must consider statements or reports from the claimant. 20 C.F.R. § 404.1529(a). To determine whether statements of a claimant are credible, the following two-part test is used:

> First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).[4] It is within the province of the ALJ, rather than the reviewing court, to evaluate the claimant's credibility. *Rogers*, 486 F.3d at 247 (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 644 (6th Cir. 1990); *Kirk v. Sec'y of Health & Human Servs*., 667 F.2d 524, 538 (6th Cir. 1981)). Even so, the credibility determinations of the ALJ must be reasonable and supported by substantial evidence. *Rogers*,

---

[4] In 20 C.F.R. § 404.1529, the Social Security Administration informs claimants that, in certain credibility determinations, the following factors should guide the analysis of the agency decision makers:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3); *see also Felisky v. Bowen*, 35 F.3d 1027, 1037-38 (6th Cir. 1994).

486 F.3d at 249. Here, Dishman does not appear to directly challenge any finding by the ALJ concerning Dishman's own credibility.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III.  Ground One:  Mental-Health Limitations

Here, the ALJ found persuasive the psychological opinions that Dishman had moderate limitations in three out of four mental domains. Dishman argues that, despite this persuasiveness finding, the ALJ erroneously failed to "include the entirety of the limitations" from the medical opinions (which adopted the 2017 mental RFC) or otherwise "explain their exclusion." D.E. 14 at 1.

In a report dated March 5, 2024, state agency psychological consultant G. Stephen Perry opined that the 2017 RFC was "persuasive." D.E. 11 at 95. Dr. Perry explained:

> Claimant manages basic [activities of daily living], generally presents to her provider in no acute distress with normal cognitive function/memory. Did present with difficulties at the mental [consultative examination] and given prior evidence. The ALJ decision is persuasive:
>
> As per adopted 3/31/2017 ALJ decision:  "the claimant is limited to simple, 1 to 2-step tasks; she must avoid interaction with the general public; and she can only occasionally interact with coworkers in a setting where workplace settings (likely meant changes) are infrequent and gradually introduced."

*Id*. Dr. Jane F. Brake's examination reached the same conclusion. *Id*. at 104.

The "bottom line," Dishman says, "is that the ALJ never explained why he chose to exclude the 1-2 step tasks and gradually introduced changes limitation." *Id*. at 3-4. The ALJ's opinion thus "fails to build an accurate and logical bridge between the evidence and his findings." *Id*. at 3.

In reading the 2025 opinion, it appears the 2025 ALJ's intention was to adopt and recapitulate the RFC from the 2017 opinion, with a single caveat: "Overall, the limitations outlined in the mental residual functional capacity set forth by the prior ALJ remain intact, but the undersigned has updated the language to be more vocationally relevant and in line with current rules and regulations." D.E. 11 at 33. The question is: In revising the RFC language, did the 2025 ALJ accidentally create a less-restrictive RFC and thereby commit harmful error?

Here is the entirety of the 2017 RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to simple, 1 to 2-step tasks; she must avoid interaction with the general public; and she can only occasionally interact with coworkers in a setting where workplace settings are infrequent and gradually introduced.

D.E. 11 at 78. And here is the mental-health portion of the 2025 RFC, which limited Dishman to light work, with additional restrictions:

> Mentally, she can understand and remember simple instructions. She can maintain attention, concentration, and pace to carry out simple tasks over two-hour segments during an eight-hour workday. She can occasionally interact with coworkers and supervisors but cannot interact with the public. She can adapt to occasional workplace changes related to simple tasks.

*Id*. at 30.

Here is the issue. Instead of "limited to simple, 1 to 2-step tasks," the new RFC limits Dishman to "simple tasks over two-hour segments during an eight-hour workday." The 2025 RFC also changes "workplace [changes] are infrequently and gradually introduced," to "occasional workplace changes related to simple tasks." But Dishman does not object to this change.

In support of her argument that the 2025 ALJ made a meaningful change when he replaced "simple, 1 to 2-step tasks" with "simple tasks over two-hour segments," Dishman leans

on two Ohio cases, *Murray* and *Green*.  D.E. 12 at 14-15; D.E. 15 at 4-5.  Both cases are unpublished district-court decisions that are not binding on this Court.  But the Court will analyze both cases, to see whether they track Dishman's case and whether they offer persuasive analyses.

The question before the *Green* court concerned "the distinction between simple tasks and 1-2 step tasks."  *Green v. Comm'r of Soc. Sec.*, No. 3:20-CV-1623-JGC, 2022 WL 610643, at *3 (N.D. Ohio Mar. 2, 2022).  In *Green*, as here, "The state psychiatric consultative examiners' opinion, which the ALJ found persuasive, included a limitation to 1-2 step tasks.  However, the RFC limits plaintiff to 'simple tasks.'"  *Id*.  Green argued "the ALJ erred because she did not adopt the 1-2 step task limitation, or alternatively, because she did not explain her reasons for not adopting it."  *Id*.

The *Green* court focused on the rule that an ALJ "must provide an explanation that is sufficient to enable a reviewing court to create a logical bridge between the evidence and the result."  *Green*, 2022 WL 610643, at *3 (citing *Ripley v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 752, 766 (N.D. Ohio 2019)).

> An ALJ fails to meet this requirement where she, without explanation, deviates significantly from limitations set forth in a medical opinion or where the limitations she adopts conflict with such opinion.  *See Conrad v. Saul*, No. 5:20-CV-01509, 2021 WL 4429848, at *11 (N.D. Ohio) (Greenberg, M.J.) (remanding where ALJ did not explain his significant deviation from opinion he found consistent with evidence of record); *Weekly. v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-2108, 2015 WL 45529, at *8 (N.D. Ohio) (McHargh, M.J.) ("[I]f the opinion of a medical source contradicts the RFC finding, an ALJ must explain why he did not include its limitations in the determination of the RFC.").

*Id*.

A critical portion of the *Green* court's analysis is distinguishable from Dishman's case.  As the *Green* court explained:

10

> As an initial matter, it is not evident from the ALJ's decision whether she believes simple tasks are different than 1-2 step tasks. While the parties appear to agree that they are different, the ALJ did not indicate whether she shared that view. Therefore, it is impossible to know whether she meant to adopt the limitation suggested by the state examiners or deviate from it. It is certainly possible that she conflated the two terms, intending to adopt the limitation set forth in the state examiners' opinion.

*Green*, 2022 WL 610643, at *4.

The situation is different here. In Dishman's case, the ALJ, as required by law, started with the mental RFC drafted in 2017. Dishman's 2025 ALJ explained that he was adopting the 2017 mental RFC in substance, and the changes in wording were intended only as updates to the language: "Overall, there has been no significant change in [Dishman's] mental impairments [since the 2017 opinion], but her mental residual functional capacity has been updated to use more vocationally relevant terminology in line with the current rules, regulations, and listings governing mental impairments." D.E. 11 at 26.

The Court interprets this statement as meaning Dishman's 2025 ALJ believed there was no difference between "simple, 1 to 2-step tasks" and "simple tasks over two-hour segments."

The comparison between this case and *Green* breaks down at this point. The ALJ's opinion in *Green* failed the "logical bridge" test because "the ALJ either did not explain that she intended to adopt the 1-2 step task limitation or did not explain why she decided to deviate from that limitation." *Green*, 2022 WL 610643, at *4. That logical bridge was "missing" because there was "an ambiguity surrounding the task-based restriction that the ALJ adopted." *Id*. In contrast, here, the ALJ clearly believed the mental limitations in the 2017 RFC and the 2025 RFC were equivalent.

Accordingly, in this case, there is no "logical bridge" problem as there was is *Green*. The ALJ here believed the two RFCs were identical. But the next question is whether the ALJ in this

11

case was *incorrect* in thinking "simple tasks over two-hour segments" is equivalent to "simple, 1 to 2-step tasks." This is where Dishman's next case, *Murray*, comes into play.

In *Murray*, the RFC limited the claimant to "routine tasks with detailed but uninvolved instructions." *Murray v. Comm'r of Soc. Sec.*, No. 5:24-CV-639, 2025 WL 841084, at *15 (N.D. Ohio Mar. 18, 2025), *recommendation adopted sub nom. Murray v. Bisignano*, 2025 WL 2249590 (N.D. Ohio Aug. 7, 2025). But the psychological opinions, which the ALJ found persuasive, limited Murray to "both an ability to 'understand, retain, and follow simple instructions (i.e., perform one and two step tasks)' and an ability to 'perform simple, routine, repetitive tasks.'" *Id*.

Rather than conducting a "logical bridge" analysis, the *Murray* court focused on Social Security Ruling 96-8p.[5] Under that ruling, whenever an RFC "conflicts" with the identified limitation, the ALJ must explain why he adopted the conflicting limitation. *Murray*, 2025 WL 841084, at *15. The *Murray* court found that there was a conflict and that "SSR 96-8p thus required the ALJ to explain why that part of the state agency opinions was not adopted. *See* 61 Fed. Reg. at 34478." *Id*. at 16. The Court's analysis was as follows:

> Under the Dictionary of Occupational Titles ("DOT"), all jobs are assigned a General Educational Development ("GED") score, which considers the reasoning, mathematical, and language development required for satisfactory job performance. *See* Dictionary of Occupational Titles, Components of the Definition Trailer, 1991 WL 688702 (1991). Reasoning development is divided into six levels. *Id*. Levels 1 and 2 are defined as follows:
>
> > Level 2: Apply commonsense understanding to carry out <u>detailed but uninvolved</u> <u>written or oral instructions</u>. Deal with problems involving a few concrete variables in or from standardized situations.

---

[5] Social Security Ruling (SSR) 96-8p. Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 61 FR 34474-01.

> Level 1: Apply commonsense understanding to carry out <u>simple one- or two-step instructions</u>. Deal with standardized situations with occasional or no variables in or from these situations encountered on the job.

*Id*. (emphasis added).

> Considering the DOT language defining Reasoning Levels 1 and 2, it is noteworthy that the state agency opinions in this case include a limitation to "simple instructions (i.e., perform one and two step tasks)"—generally tracking the DOT definition of Reasoning Level 1—while the RFC limitation to "routine tasks with detailed but uninvolved instructions" generally tracks the DOT definition of Reasoning Level 2. . . . [T]he language of the state agency opinions and the RFC track closely enough to the DOT's language to support a finding that the mental RFC "conflicts" with the state agency opinions finding Plaintiff can "perform one and two step tasks," and that SSR 96-8p thus required the ALJ to explain why that part of the state agency opinions was not adopted. *See* 61 Fed. Reg. at 34478.

*Id*.

And now it becomes clear where this case differs from *Murray*. In *Murray*, the RFC's language of "routine tasks with detailed but uninvolved instructions" tracks the verbiage of Reasoning Level 2. Here, however, the ALJ did not speak of "detailed but uninvolved instructions." Rather, Dishman's ALJ's RFC limits Dishman to "simple instructions," "simple tasks over two-hour segments during an eight-hour workday," and "occasional workplace changes related to simple tasks." D.E. 11 at 30. The word "simple" is not used in the regulation defining Reasoning Level 2. But it is used in the description of Reasoning Level 1. At that level, a claimant can "[a]pply commonsense understanding to carry out **simple** one- or two-step instructions [and d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." Appendix C - Components of the Definition Trailer, 1991 WL 688702 (emphasis added). Only Level 1 contains the word "simple." Unlike in *Murray*, the ALJ here did not promote Dishman to a higher level of reasoning ability than that

13

described by the persuasive psychological opinions.  Here, the ALJ revised the RFC's mental-limitations language without changing the substance.

Dishman argues to the contrary and points to the jobs the VE opined that Dishman could perform at her RFC.  According to Dishman, all three of the occupations (garment sorter, inspector / hand packager, and price marker) "have a GED Reasoning Level of 2. *DOT* #222[.]687-014, *DOT* #559.687-074, *DOT* #209.587-034."  D.E. 12 at 16.  This observation is correct.  Dishman avers that, "had the ALJ included the one-to-two step task limitation, none of these occupations would be available.  As such, the ALJ's failure to explain the exclusion of the limitation directly impacted the outcome.  For these reasons, remand is warranted." *Id*.

To summarize, Dishman argues that the psychological examiners' 1-to-2-step limitation means she can only perform jobs with a GED Reasoning Level of 1.  However, the 2025 VE provided a list of jobs with a GED Reasoning Level of 2.  But here the Court makes another observation.  In *2017*, the VE in Dishman's case, based on an RFC that included the 1-to-2-step limitation, provided a different list of three jobs that Dishman could perform:

• Garment folder (DOT 789.687-066) light, SVP 2-unskilled; 74,000 jobs nationally.

• Inspector (DOT 559.687-074) light, SVP 2-unskilled; 130,000 jobs nationally.

• Hand packager (DOT 753.687-038) light, SVP 2-unskilled; 290,000 jobs nationally.

D.E. 11 at 83.  Of these three jobs, the first has a GED Reasoning Level of 1, but the second two have a Reasoning Level of 2.  In fact, both the 2017 and 2025 vocational expert testified that a person with Dishman's RFC could work as an inspector and hand packager.  The 2025 ALJ's linguistic change to Dishman's mental-health RFC was not interpreted by the VE to entail a lesser intensity of mental-health restrictions.

The fact that the VE here provided jobs with a Reasoning Level of 2 provides no ground for remand. As the Commissioner points out:

> The Sixth Circuit has rejected Plaintiff's very claim that a limitation to 1 to 2-step tasks is inconsistent with a vocational expert's testimony that the claimant could perform jobs at a higher reasoning level on grounds that the Dictionary of Occupational Titles (DOT) reasoning development requirements are "merely advisory in nature." *Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183, 1998 WL 381361, at *6 (6th Cir. 1998) (citation omitted); see also *Hodge v. Colvin*, No. 14-cv-246-DLB, 2015 WL 2041927, at *5 (E.D. Ky. Apr. 20, 2015) (rejecting claim regarding reasoning levels because they are "purely advisory"). Similarly, the Sixth Circuit has rejected the argument that an ALJ is required to identify and match up "reasoning levels" when defining the RFC. *Monateri v. Comm'r of Soc. Sec.*, 436 F. App'x. 434, 446, 2011 WL 3510226, at *12 (6th Cir. Aug. 11, 2011) ("there is no precedent that requires the Commissioner to align DOT 'reasoning levels' with RFC classifications"); *see also Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-cv-291, 2014 WL 1333262, at *13-14 (N.D. Ohio Mar. 31, 2014) (finding that the plaintiff's "limitation to simple one-or two-step instructions, simple routine tasks . . . is not inconsistent with the ability to perform jobs with reasoning Level 2."). Thus, Plaintiff's assertion that an individual who can only perform 1 to 2-step tasks cannot perform jobs with a reasoning level of two fails.

D.E. 14 at 6-7.

The Court agrees. Further, federal courts in Kentucky have "explicitly rejected" the argument "'that a limitation to simple, one to three step tasks is inconsistent with reasoning level two jobs,' and instead concluded that such a limitation is consistent with the ability to perform jobs requiring level two reasoning." *Tammy B. v. O'Malley*, No. 4:24-CV-20-CRS-HBB, 2025 WL 325316, at *9 (W.D. Ky. Jan. 13, 2025) (citing *Padilla v. Saul*, No. 3:18-cv-580-CHB, 2020 WL 1651227, at *10 (W.D. Ky. Apr. 3, 2020)), *recommendation adopted*, 2025 WL 322247 (W.D. Ky. Jan. 28, 2025).

Dishman's issues concerning her mental-health limitations are not the product of reversible legal error and are not unsupported by substantial evidence.

## IV.  Ground Two:  *Deskin* Error

Dishman's next argument is that

> the state agency medical consultants offered no opinion regarding Plaintiff's RFC and the ALJ rejected the only opinion regarding physical functioning[. Therefore,] the ALJ's RFC determination was based solely on his own lay interpretation of this raw medical data.
>
> As such, the ALJ had an obligation to develop the record by obtaining a medical opinion regarding Plaintiff's functional limitations.

D.E. 15 at 6.

Dishman argues the ALJ's behavior runs afoul of the *Deskin* rule, which this Court has followed.  *See Stidham v. King*, No. 6:24-CV-87-HAI, 2025 WL 437075 (E.D. Ky. Feb. 7, 2025); *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013 (E.D. Ky. Feb. 6, 2019).

In *Deskin*, none of the claimant's treating physicians had provided a medical opinion addressing her limitations.  *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 910 (N.D. Ohio 2008).  The only medical opinion in the record came from a state agency reviewing physician; it was issued in October 2003.  *Id*.  However, the record contained two years' worth of medical records that post-dated the state agency reviewing physician's opinion.  *Id*.  "Rather than ordering a consultative examination or having a medical expert testify at the hearing, the ALJ proceeded to decide the case based on his analysis of the medical records," without even discussing the reviewing physician's specific limitations.  *Id*.

The *Deskin* Court defined the issue as whether an ALJ should decide a case "in the absence of a medical opinion of a treating physician, consulting examiner, or medical expert as to the claimant's functional capacity."  *Deskin*, 605 F. Supp. 2d at 910-11.  To make an RFC finding, the *Deskin* court held, it is "[c]ritical" that the ALJ obtain and consider "residual capacity opinions offered by medical sources such as treating physicians, consultative examining

16

physicians, medical experts who testify at hearings before the ALJ, and state agency physicians who reviewed the claimant's medical records." *Id*. at 911-12. "In making the residual functional capacity finding," the *Deskin* court held, "the ALJ may not interpret raw medical data in functional terms." *Id*. at 912.

> An ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate these diagnoses to specific residual functional capabilities such as those set out in 20 C.F.R. § 404.1567(a) . . . [the Commissioner may not] make the connection himself."

*Id*. (quoting *Rohrberg v. Apfel*, 26 F. Supp. 2d 303, 311 (D. Mass. 1998)).

The *Deskin* court added this caveat: "To be sure 'where the medical evidence shows relatively little physical impairment, an ALJ permissibly can render a commonsense judgment about functional capacity even without a physician's assessment.'" *Deskin*, 605 F. Supp. 2d at 912 (quoting *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 17 (1st Cir. 1996)). An RFC opinion from a medical source "may not be necessary in every case." *Id*. However, when a claimant has sufficiently placed her RFC at issue, an expert's RFC evaluation "is ordinarily essential." *Id*. (quoting *Manso-Pizarro*, 76 F.3d at 17).

Accordingly, the *Deskin* court posited this "general rule:"

> where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations (or only an outdated nonexamining agency opinion), to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating source, order a consultative examination, or have a medical expert testify at the hearing. This responsibility can be satisfied without such opinion only in a limited number of cases where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity.

*Deskin*, 605 F. Supp. 2d at 912 (quotation marks omitted).

The author of *Deskin* again faced a similar scenario in *Kizys*. *Kizys v. Comm'r of Soc. Sec.*, No. 3:10-CV-25, 2011 WL 5024866 (N.D. Ohio Oct. 21, 2011). As the *Kizys* court stated the issue: "This is a case in which the ALJ found that Kizys had multiple severe impairments and imposed an extremely restrictive residual functional capacity finding without the benefit of any medical source opinion as to work-related limitations whatsoever." *Id*. at *1. The *Deskin* rule is "narrow" and "potentially applies only when an ALJ makes a finding of work-related limitations based on no medical source opinion or an outdated source opinion that does not include consideration of a critical body of objective medical evidence." *Id*. Nevertheless, an ALJ "retains discretion to impose work-related limitations without a proper source opinion where the medical evidence shows relatively little physical impairment and an ALJ can render a commonsense judgment about functional capacity." *Id*. (quotation marks omitted).

This Court's understanding is that "***Deskin* potentially applies in only two circumstances: (1) where an ALJ made an RFC determination based on *no* medical source opinion; or (2) where an ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence.**" *Branscum*, 2019 WL 475013, at *11 (quoting *Raber v. Comm'r of Soc. Sec.*, No. 4:12-CV-97, 2013 WL 1284312, at *15 (N.D. Ohio Mar. 27, 2013)); *accord Pilar P. v. Bisignano*, No. 3:25-CV-50-RSE, 2025 WL 2413908, at *4 (W.D. Ky. Aug. 20, 2025); *Sefo v. Comm'r of Soc. Sec.*, No. 3:20-CV-534-CHL, 2022 WL 969622, at *4 (W.D. Ky. Mar. 30, 2022).

Numerous decisions in this Circuit have followed the *Deskin-Kizys* rule when the facts fit.[6] The "*Deskin* Rule" has been criticized by courts within this Circuit, but generally not in cases that fit the rule in its most narrow formulations described above.

---

[6] *See, e.g.*, *Michelle B. o/b/o Duane B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-361, 2025 WL 395888, at *5 (S.D. Ohio Feb. 5, 2025) ("It is also well-established that the ALJ is not qualified to interpret raw medical data in

To be clear, this Court agrees that crafting the RFC is within the ALJ's domain and the

ALJ's RFC is not required to correspond to an identical medical opinion.  The claimant bears the

---

functional terms.")), *recommendation adopted*, 2025 WL 854720 (S.D. Ohio Mar. 19, 2025); *Ashley B. v. Comm'r of Soc. Sec. Admin.*, No. 1:23-CV-690, 2025 WL 341824 (S.D. Ohio Jan. 30, 2025) (remanding when there were significant medical developments post-dating the medical opinions in the record); *Aarron D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-00588-CHL, 2024 WL 1288230 (W.D. Ky. Mar. 26, 2024) (remanding under *Deskin* when there was "no medical source opinion whatsoever"); *McCauley v. Comm'r of Soc. Sec.*, No. 3:20-CV-13069, 2021 WL 5871527 (E.D. Mich. Nov. 17, 2021) (recommending remand when "nearly two years of medical records were not considered in" the medical opinions available to the ALJ), *report and recommendation adopted*, 2021 WL 5867347 (E.D. Mich. Dec. 10, 2021); *Shelley v. Comm'r of Soc. Sec.*, No. 2:18-CV-676, 2019 WL 4023551 (S.D. Ohio Aug. 26, 2019) (remanding when the petitioner had undergone "multiple procedures" following the rendering of the most recent medical source opinion); *Snell v. Comm'r of Soc. Sec.*, No. 3:18-CV-173, 2019 WL 3406435 (S.D. Ohio July 29, 2019) (remanding when there was a critical CT scan not covered in any of the medical opinions); *VanWormer v. Comm'r of Soc. Sec.*, No. 4:16-CV-12978, 2017 WL 4230654, at *3 (E.D. Mich. Sept. 25, 2017); *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 828-29 (E.D. Mich. 2017) (finding "a multitude of consistent, reported and unreported cases holding that it is in error for the ALJ to formulate an RFC without the benefit of *any opinion evidence*"); *Woelk v. Comm'r of Soc. Sec.*, No. 2:13-CV-12411, 2014 WL 2931404, at *7 (E.D. Mich. May 15, 2014) (finding an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence), *recommendation adopted*, 2014 WL 2931411 (E.D. Mich. June 30, 2014); *Lindsey v. Comm'r of Soc. Sec.*, No. 2:12-CV-12585, 2013 WL 6095545, at *8 (E.D. Mich. Nov. 20, 2013) (remanding when the impairment was not minimal and there was no relevant medical opinion on RFC); *Davies v. Comm'r of Soc. Sec.*, No. 1:10-CV-2012, 2012 WL 1068736, at *4 (N.D. Ohio Feb. 14, 2012) (remanding when the operative medical opinion did not take into account "additional objective medical tests performed later, which revealed that [the claimant's] condition had worsened"), *recommendation adopted sub nom. Davies v. Astrue*, 2012 WL 1068732 (N.D. Ohio Mar. 29, 2012).

For cases in Kentucky, *see, e.g.*, *Pilar P. v. Bisignano*, No. 3:25-CV-50-RSE, 2025 WL 2413908, at *4 (W.D. Ky. Aug. 20, 2025) (remanding when "the state agency consultants determined Plaintiff had no severe mental impairments and did not provide opinions as to the RFC, whereas [the ALJ] found that Claimant's mental impairments were severe before making his RFC determination"); *Doris B. v. Comm'r of Soc. Sec.*, No. 3:23-CV-598-CHL, 2025 WL 676073, at *4 (W.D. Ky. Mar. 3, 2025) ("The *Deskin* rule applies here because the ALJ made an RFC determination based on no medical source opinion whatsoever."); *Gennifer B. v. O'Malley*, No. 3:23-CV-558-RSE, 2025 WL 510928, at *12 (W.D. Ky. Feb. 14, 2025) (finding "neither of the *Deskin* circumstances apply"); *Stidham v. King*, No. 6:24-CV-87-HAI, 2025 WL 437075, at *7 (E.D. Ky. Feb. 7, 2025) (remanding when the ALJ "made an RFC determination based on outdated source opinions that did not include consideration of a critical body of objective medical evidence"); *Aarron D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-588-CHL, 2024 WL 1288230, at *4 (W.D. Ky. Mar. 26, 2024) ("The *Deskin* rule applies here because the ALJ made an RFC determination based on no medical source opinion whatsoever."); *Charles W. v. Comm'r of Soc. Sec.*, No. 3:22-CV-312-DJH-CHL, 2023 WL 5011745, (W.D. Ky. July 5, 2023) (finding *Deskin* inapplicable), *recommendation adopted sub nom. Washburn v. Comm'r of Soc. Sec.*, 2023 WL 5003585 (W.D. Ky. Aug. 4, 2023); *Jeffrey Scott H. v. Comm'r of Soc. Sec.*, No. 3:21-CV-14-CHL, 2022 WL 4002318, at *14 (W.D. Ky. Sept. 1, 2022) (finding later-admitted records were not "a critical body of the objective medical evidence"); *Sefo v. Comm'r of Soc. Sec.*, No. 3:20-CV-534-CHL, 2022 WL 969622 (W.D. Ky. Mar. 30, 2022); *Hancock v. Comm'r of Soc. Sec.*, No. 3:20-CV-376-CHL, 2022 WL 801278, at *5 (W.D. Ky. Mar. 15, 2022) (remanding when the record "did not contain an updated opinion from a medical professional regarding [the claimant's] functional capacity that post-dated his significant cardiac procedures and care"); *Nalley v. Kijakazi*, No. 3:20-CV-472-RSE, 2021 WL 5530954, at *3-4 (W.D. Ky. Nov. 24, 2021) (describing the *Deskin* rule but finding it did not apply); *Brown v. Saul*, No. 1:19-CV-165-HBB, 2020 WL 5077257 (W.D. Ky. Aug. 27, 2020); *Tomes v. Saul*, No. 1:19-CV-139-LLK, 2020 WL 2776501 (W.D. Ky. May 28, 2020); *Chapman v. Saul*, No. 1:19-CV-48-LLK, 2019 WL 6883810 (W.D. Ky. Dec. 17, 2019); *Branscum v. Berryhill*, No. 6:17-CV-345-HAI, 2019 WL 475013 (E.D. Ky. Feb. 6, 2019) (remanding when the ALJ "made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence"); *Childress v. Berryhill*, No. 1:16-CV-119-HBB, 2017 WL 758941 (W.D. Ky. Feb. 27, 2017); *McGranahan v. Colvin*, No. 0:14-CV-83-JMH, 2015 WL 5828098 (E.D. Ky. Oct. 1, 2015) (remanding when degenerative changes had been detected following the last medical opinion).

burden of proving "the existence and severity of limitations caused by" her physical and mental impairments. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). However, both the regulations and case law recognize the ALJ has a duty to develop the record. 20 C.F.R. §§ 404.1512(b), 416.912(b) (2016); 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3) (2020); *see also Lashley v. Sec'y of Health & Hum. Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983). If, after reviewing the evidence on the record, the ALJ finds it to be insufficient or inconsistent, the ALJ may "determine the best way to resolve the inconsistency or insufficiency." 20 C.F.R. §§ 404.1520b(b)(2), 416.920b(b)(2) (2020). An ALJ is not bound to resolve the inconsistency or insufficiency in a particular manner, but she may take additional steps to do so, including ordering a consultative examination. 20 C.F.R. §§ 404.1520b(b)(2)(iii), 416.920b(b)(2)(iii); *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). While the ALJ has discretion in resolving discrepancies, substantial evidence in the record must support the residual functional capacity finding. *See, e.g., Deskin*, 605 F. Supp. 2d at 911 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007)).

Dishman argues that this case fits within the first *Deskin* scenario. As Dishman explains, "The ALJ found Plaintiff's degenerative disc disease and chronic obstructive pulmonary disease were severe medically determinable impairments." D.E. 12 at 19. The ALJ thus limited Deskin to light work, with additional physical limitations. *See* D.E. 11 at 30. Dishman points out that both state agency consultants "determined there were no severe physical medically determinable impairments and, therefore, they offered no opinions as to the RFC." D.E. 12 at 20 (citing D.E. 11 at 91-92, 100). However, the record also contains "the opinion of the physical consultative examiner, Dr. Gainer (C6F)," which the ALJ found to be "unpersuasive." D.E. 11 at 33.

James Gainer, M.D., offered his opinion concerning Dishman's limitations, based on an exam conducted on February 10, 2024. He explained that symptoms from Dishman's historical injuries "do affect [her] ability to carry out physical activities such as walking, standing, and mobility. [The symptoms do] not affect grasping objections." D.E. 11 at 386. He opined:

> Based on the exam, patient should be able to sit. Patient should be able to stand for 30 minutes. Patient was able to get on and off the table without assistance or visible discomfort. No assistive device should be necessary. Patient should be able to lift and carry objects weighing approximately 30 pounds without difficulty. Patient should be capable of handling objects in both hands with good fine motor coordination. Range of motion of upper and lower extremities is normal, except as listed in attached sheet. Patient can hear and speak without difficulties. Patient demonstrates good judgment and coordination in avoiding hazards in the workplace and home. Patient has normal ability to reason and make occupational, personal and social adjustments. Patient should be able to travel.

*Id*. at 388.

The record of this case accordingly *does* contain a medical-source opinion on Dishman's physical work-related limitations.

As to the second *Deskin* scenario, this is not a case where the ALJ made an RFC determination based on an outdated source opinion that did not include consideration of a critical body of objective medical evidence. As just noted, the record contains a physician's physical functional capacity assessment from February 2024. Dishman argues that the record also contains "an x-ray and CT scan that had not been evaluated by any medical source to translate those studies into functional limitations. (Tr. 375, 901)." D.E. 12 at 22. However, only one of these, the CT scan, post-dates Dr. Gainer's opinion. This was a "lung screening" that found "[n]o acute intrathoracic abnormality." D.E. 11 at 901. This August 26, 2025 lung screen was not a critical body of objective medical evidence that required the ALJ to obtain a new medical-source opinion. The lung screen appeared to follow an August 24, 2024 emergency room visit

for shortness of breath.  *See* D.E. 11 at 614-25.  This visit was related to Dishman's COPD, which is one of the severe impairments identified by the ALJ.  *See* D.E. 11 at 28, 32.  Because the records related to the August 2024 emergency room visit concern Dishman's previously diagnosed COPD (recognized as a severe impairment that was incorporated in the 2025 RFC), they also do not constitute a critical body of new evidence requiring a new medical-source opinion.

Accordingly, this is not a case in which remand is warranted under the *Deskin* rule. Although the ALJ found Dr. Gainer's opinion unpersuasive and crafted his own RFC, this is not a case where there was no medical source opinion.  Nor was there a critical body of raw medical evidence (post-dating any medical functional assessments) upon which the ALJ impermissibly relied.

## V.  CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**.  Plaintiff's request to remand (D.E. 12) is **DENIED**.  Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 14th day of November, 2025.

**Signed By:**

*Hanly A. Ingram*

**United States Magistrate Judge**